UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gold'n Plump Farms Limited Partnership, LLP,<br><br>Plaintiff,<br><br>v.<br><br>Wenda America, Inc.,<br><br>Defendant. | Court File No.  0:12-cv-03198-JRT-LIB<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gold'n Plump Farms Limited Partnership, LLP, by its undersigned counsel, for its First Amended Complaint against Defendant Wenda America, Inc., alleges as follows:

**PARTIES**

1. Plaintiff Gold'n Plump Farms Limited Partnership, LLP ("GNP Farms") is a Minnesota limited partnership with its principal place of business at 4150 2nd Street South, Suite 200, St. Cloud, MN 56301.  GNP Farms, along with its sibling company, Gold'n Plump Poultry, Inc. ("GNP Poultry"), are part of GNP Company.

2. Defendant Wenda America, Inc. ("Wenda") is an Illinois corporation with its principal place of business at 1823 High Grove Lane, Suite # 103, Naperville, Illinois 60540.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over Wenda because Wenda conducts substantial business in Minnesota and some or all of the events giving rise to this cause of

action arose in Stearns County, Minnesota.  Wenda markets and sells its products to GNP Poultry in Minnesota.

4. This matter is properly venued in Stearns County pursuant to Minn. Stat. § 542.09 as some or all of this cause of action arose in Stearns County.

## FACTUAL BACKGROUND

5. GNP Farms is in the business of selling poultry and poultry products for human consumption.

6. GNP Poultry is in the business of processing poultry intended for sale to consumers for human consumption, including for its sibling company GNP Farms.

7. Wenda sells food product ingredients in the United States and is part of a larger company that sells food product ingredients in Europe, China, the Middle East, South America and elsewhere.

8. Ingredients in products such as Wenda's, which are used in poultry products intended for human consumption, must be approved as a Safe and Suitable Ingredient by the United States Department of Agriculture ("USDA") for use in poultry.

9. If an ingredient which is not USDA-approved is used in poultry products, even if safe for human consumption, and the food bears the USDA's legend, the poultry product is misbranded.

10. Each ingredient in a poultry product must be included in the ingredient list.

11. A product that contains an ingredient not listed in the ingredient list on that product's label is misbranded.

12. Under 21 U.S.C. § 331(a), part of the Food, Drug and Cosmetic Act ("FDCA"), misbranded food cannot be sold.

13. In 2011, GNP Poultry began purchasing WendaPhos 600 from Wenda for use in processing certain marinated poultry products for GNP Farms.

14. Wenda knew that GNP Poultry intended to use the WendaPhos 600 to process poultry products for human consumption, and that GNP Poultry's corporate affiliates, including GNP Farms, intended to distribute those products for human consumption.

15. Wenda also knew that the ingredients in any such product must be approved by the USDA.

16. The ingredients in WendaPhos 600 have been approved for use in poultry products by the USDA.

17. Wenda also knew that the poultry product produced would bear labels which include the ingredients of WendaPhos 600, but not the ingredients in WendaPhos F1.

18. In 2011, Wenda sought to become an "Approved Vendor" for GNP Poultry.

19. To meet the requirements to become a GNP Poultry Approved Vendor, Wenda represented that it had been certified pursuant to the British Retail Consortium's "Global Standard for Food Safety" ("BRC Standard").

20. Among other things, the BRC Standard requires that "[t]raceability [ ] be ensured during transportation" through "a clear record of shipment and receipt of goods

and materials demonstrating that sufficient checks have been completed during the transfer of goods."

21. The BRC Standard also requires Wenda to have "procedures . . . sufficiently robust so that accidental release" of its products "cannot occur."

22. On May 1, 2012, GNP Poultry issued P.O. # 9064704 to Wenda to purchase an additional 40,000 pounds of WendaPhos 600 (the "Purchase Order").

23. Pursuant to the Purchase Order, GNP Poultry received several shipments from Wenda in May and June 2012, via Wenda's agent Midwest Warehouse, of what Wenda represented to be WendaPhos 600. All of the shipments together totaled 20 pallets of product.

24. A bill of lading was provided by Wenda to GNP Poultry with each shipment. Each bill of lading stated that the product delivered was part of the Purchase Order and consisted of WendaPhos 600.

25. Wenda also provided a sales order as to each shipment. Each sales order stated that the product was part of the Purchase Order and that the product delivered consisted of WendaPhos 600.

26. A Certificate of Analysis ("COA") was provided by Wenda to GNP Poultry with each shipment. Each COA certified that the product delivered contained the requisite components of WendaPhos 600 and that the product was part of the Purchase Order.

27. Contrary to the representations in the Purchase Order, the bills of lading, the sales orders and the COAs, some or all of one pallet was not WendaPhos 600 but rather was a different Wenda product, WendaPhos F1.

28. Two ingredients in WendaPhos F1 have not been approved by the USDA for use in poultry products. However, both ingredients are contained in other applications marketed for human consumption.

29. Wenda knew that WendaPhos F1 contained ingredients not approved by the USDA for use in poultry products. In fact, GNP Poultry had previously rejected a shipment of WendaPhos F1. The erroneously-shipped pallet of WendaPhos F1 was part of this rejected shipment.

30. On Friday, August 17, 2012, as GNP Poultry employees began to use what they understood to be WendaPhos 600, GNP Poultry employees noticed that the bags were heavier and longer than typical of WendaPhos 600 bags.

31. GNP Poultry had previously had issues with Wenda erroneously shipping WendaPhos 600 in 23-pound, rather than 20-pound, bags, and suspected that this "off-weight" issue with the WendaPhos 600 product may have occurred again.

32. GNP Poultry immediately notified Wenda about the weight difference. Wenda advised GNP Poultry that it would investigate the issue.

33. Three days later, on Monday, August 21, 2012, Wenda informed GNP Poultry that Midwest Warehouse had erroneously shipped the unapproved WendaPhos F1 instead of the WendaPhos 600.

34. GNP Poultry promptly stopped using the unapproved WendaPhos F1 in the production of GNP Farms' marinated poultry products.

35. However, by the time Wenda advised GNP Poultry of Wenda's error, GNP Poultry had incorporated the ingredient into thousands of pounds of product and packaged and delivered such product to GNP Farms.

36. Each of these packages bore the ingredient list designed for product incorporating WendaPhos 600, not WendaPhos F1. Thus the ingredient list omitted several ingredients which were actually in the product, due to the incorporation of WendaPhos F1. Each of these packages also bore the USDA's legend.

37. As a result of the incorporation of WendaPhos F1, the marinated poultry products were misbranded within the meaning of the FDCA, and thereby caused physical injury to GNP Farms poultry.

38. The USDA required GNP Farms to destroy the misbranded product.

39. As a direct and foreseeable result of Wenda's delivery of the wrong product and delay in notifying GNP Poultry, GNP Farms suffered substantial damages in an amount to be determined at trial, but in excess of $50,000, including but not limited to lost sales both from unfilled orders as well as orders lost to competitors, costs to procure replacement product, costs relating to product testing, storage and disposal, and additional labor costs.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract – Third Party Beneficiary

40. Paragraphs 1- 39 are incorporated as though fully set forth herein.

41. GNP Poultry and Wenda entered into a contract whereby GNP Poultry contracted to purchase and Wenda promised to deliver 40,000 pounds of WendaPhos 600.

42. Wenda knew that GNP Poultry intended to use the WendaPhos 600 to process poultry products on behalf of GNP Company and that GNP Company would distribute those products for human consumption. GNP Farms does business under the name GNP Company.

43. GNP Farms was a third-party intended beneficiary of the contract between GNP Poultry and Wenda.

44. Pursuant to the Purchase Order, bills of lading, sales orders and accompanying COAs received with each delivery, Wenda represented that the product delivered conformed to contract specifications, including that the product shipped was in fact WendaPhos 600.

45. Wenda knew that GNP Company was aware of and relied on those contractual promises.

46. By delivery of WendaPhos F1 instead of WendaPhos 600 as promised, Wenda breached its contractual obligations.

47. As a direct result of Wenda's breach of contract, GNP Farms suffered substantial damages in an amount to be determined at trial, but in excess of $50,000, including incidental and consequential damages which were reasonably foreseeable at the time of contracting.

## COUNT II
## Breach of Express Warranties

48. Paragraphs 1-47 are incorporated as though fully set forth herein.

49. Under Minn. Stat. § 336.2-318, "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section."

50. Wenda, by acceptance of the Purchase Order, and issuance of the sales orders, bills of lading, and COAs, among other things, expressly warranted that the product shipped was WendaPhos 600.

51. Additionally, Wenda expressly warranted in the Purchase Order that the product delivered would "conform to all State, Federal and Local Regulations and Laws."

52. By its delivery of WendaPhos F1 instead of WendaPhos 600, which Wenda knew could not legally be used in the production of poultry product, Wenda breached these express warranties.

53. As a party reasonably expected to use, consume, or be affected by the delivered product, Wenda's express warranty extended to GNP Farms.

54. As a direct result of Wenda's delivery of the wrong product, GNP Farms suffered substantial damages in an amount to be determined at trial, but in excess of $50,000, including incidental and consequential damages which were reasonably foreseeable at the time of contracting.

## COUNT III
## Breach of Implied Warranty of Merchantability

55. Paragraphs 1-54 are incorporated as though fully set forth herein.

56. Wenda is a merchant with respect to the goods delivered under the Purchase Order, namely, ingredients intended for use in food, including poultry products. Minn. Stat. § 336.2-314 implies, into every contract for the sale of such goods, a warranty that the goods are merchantable.

57. As such, Wenda impliedly warranted that the product delivered pursuant to the Purchase Order was merchantable – that the product would, among other things, "pass without objection in the trade under the contract description" and "[be] fit for the ordinary purposes for which the goods are used." Minn. Stat. § 336.2-314(2)(a), (c).

58. WendaPhos F1, which Wenda knew could not be used in poultry production, would not "pass without objection" in the contract description or be "fit for the ordinary purposes for which the goods are used," namely, use in poultry.

59. By delivering WendaPhos F1 instead of WendaPhos 600, Wenda breached the implied warranty of merchantability.

60. GNP Farms was a party reasonably expected to use, consume or be affected by the delivered product. As a result, Wenda's implied warranty of merchantability extended to GNP Farms.

61. As a direct result of Wenda's breach of the implied warranty of merchantability, GNP Farms suffered substantial damages in an amount to be determined at trial, but in excess of $50,000, including incidental and consequential damages which were reasonably foreseeable at the time of contracting.

## COUNT IV
## Breach of Implied Warranty of Fitness for a Particular Purpose

62. Paragraphs 1-61 are incorporated as though fully set forth herein.

63. A warranty that the goods furnished will be fit for their particular purpose is implied into any contract "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Minn. Stat. § 336.2-315.

64. As a party reasonably expected to use, consume, or be affected by the delivered product, Wenda's implied warranty of fitness for a particular purpose extended to GNP Farms. Minn. Stat. § 336.2-318.

65. Wenda is in the business of selling and distributing ingredients for use in foods, including poultry, intended for human consumption, and knew that the product delivered pursuant to the Purchase Order would be used as an ingredient in poultry.

66. Wenda also knew that the ingredients in its WendaPhos F1 product were not approved for use in poultry.

67. GNP Poultry had consulted with, and relied on, Wenda to furnish goods that would be legal, usable, and suitable for use in the production of poultry products.

68. Wenda impliedly warranted that the product delivered under the Purchase Order was fit for this intended purpose.

69. By its delivery of WendaPhos F1, a product which Wenda knew was not approved by the USDA for use in poultry, rather than WendaPhos 600, Wenda breached its implied warranty of fitness for a particular purpose.

70. GNP Farms was a party reasonably expected to use, consume, or be affected by delivered product. As a result, Wenda's implied warranty of fitness for an intended purpose extended to GNP Farms.

71. As a direct result of Wenda's breach of the implied warranty of fitness for a particular purpose, GNP Farms suffered substantial damages in an amount to be determined at trial, but in excess of $50,000, including incidental and consequential damages which were reasonably foreseeable at the time of contracting.

## COUNT V
## Negligence

72. Paragraphs 1-71 are incorporated as though fully set forth herein.

73. Wenda had a duty to exercise reasonable care not to damage GNP Farms' poultry by ensuring that the product delivered to GNP Poultry for use in GNP Farms' marinated poultry product was WendaPhos 600, the product actually ordered.

74. Wenda had a duty to exercise reasonable care not to damage GNP Farms' poultry by ensuring that the products delivered to GNP Poultry for use in the production of GNP Farms' products were reasonably fit for their intended use, namely, as an ingredient in GNP Farms' marinated poultry product.

75. Wenda knew that its WendaPhos F1 product was not approved for use in poultry, and had a duty to exercise reasonable care that this unapproved product, which had been previously rejected by GNP Poultry, not be delivered to GNP Poultry.

76. Wenda breached these duties by failing to exercise ordinary care and by erroneously delivering to GNP Poultry, for use in GNP Farms' marinated poultry product, WendaPhos F1 – a product not approved by USDA for use in poultry and previously rejected by GNP Poultry.

77. Wenda knew, or in the exercise of reasonable care should have known, that its breach of duties and failure to exercise ordinary care would cause damage to those, including GNP Farms, reasonably expected to use, consume, or be affected by its products.

78. As a direct result of Wenda's negligence and breach of duties, GNP Farms suffered damages in an amount to be determined at trial, but in excess of $50,000, including incidental and consequential damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff GNP Farms requests relief as follows:

1. Judgment against Defendants in an amount to be determined at trial but in excess of $50,000, plus such pre- and post-judgment interest, costs, expenses, and reasonable attorneys' fees as allowed by law; and

2. Such other relief as the Court determines is just and equitable.

Dated:  January 3, 2013                                  **BRIGGS AND MORGAN, P.A.**


By: s/ Susan E. Gelinske
    Lauren E. Lonergan (#143443)
    Susan E. Gelinske (#027477X)
    Maren F. Grier (#0390221)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2157
(612) 977-8400

**ATTORNEYS FOR PLAINTIFF GOLD'N PLUMP FARMS LIMITED PARTNERSHIP, LLP**