## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| GOLD'N PLUMP FARMS LIMITED PARTNERSHIP, LLP, | Civil No. 12-3198 (JRT/LIB) |

Plaintiff,

v.

MIDWEST WAREHOUSE &
DISTRIBUTION SYSTEM, INC.,

Defendant.      **MEMORANDUM OPINION
AND ORDER**

and

GOLD'N PLUMP POULTRY, INC.,

Fourth Party Plaintiff,

v.

MIDWEST WAREHOUSE &
DISTRIBUTION SYSTEM, INC.,

Fourth Party Defendant.

Lauren E. Lonergan, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN  55402, for plaintiff.

Brian D. Steffes, **FISHER BREN & SHERIDAN, LLP**, 920 Second Avenue South, Suite 975, Minneapolis, MN  55402 and Thomas L. Garrity, **LAW OFFICES OF JEFFRETY A. MAGNUS**, 5201 Eden Avenue, Suite 340, Edina, MN  55436, for defendant.

This case arises from the alleged accidental shipment of an unapproved processing

ingredient to a poultry company, which resulted in the United States Department of

Agriculture requiring the company to destroy some of its poultry.  Wenda America, Inc. ("Wenda") shipped the unapproved ingredient to Gold'n Plump Poultry, Inc. ("GNP Poultry"), who processed some poultry with the ingredient before sending the poultry to its corporate affiliate, plaintiff Gold'n Plump Farms Limited Partnership, LLP ("GNP Farms"), for sale to the public.  The mistake in shipping allegedly occurred at Wenda's distribution center, Midwest Warehouse & Distribution System, Inc. ("Midwest").

GNP Farms now moves for entry of default judgment against Midwest.  Midwest brings a motion for leave to file an answer to GNP Farms' Second Amended Complaint. Because Midwest has established that there is good cause to set aside any entry of default, the Court will deny GNP Farms' motion.  Additionally, the Court will allow Midwest to file an answer to the Second Amended Complaint.

**BACKGROUND**

**I.    THE COMPLAINTS**

GNP Farms and GNP Poultry commenced this action against Wenda in Stearns County District Court.  (Not. of Removal ¶ 1, Dec. 28, 2012, Docket No. 1.)  The complaint alleged breach of contract, breach of various warranties, and negligence associated with the erroneous ingredient shipment.  (Not. of Removal, Ex. 1.)  Wenda removed the action to federal court on December 28, 2012.  (*See* Not. of Removal.)

On January 3, 2013, GNP Farms, as the sole plaintiff, filed an amended complaint against Wenda alleging breach of contract based on a third party beneficiary theory and the same breach of warranties and negligence claims brought in the original complaint.

(First Am. Compl., Jan. 3, 2013, Docket No. 4.)  Wenda then filed a third party complaint against GNP Poultry bringing claims for breach of contract and alleging that GNP Poultry was grossly negligent in processing poultry with the erroneously shipped ingredient.  (Third Party Compl., Jan. 17, 2013, Docket No. 7.)

During a July 10, 2013 deposition of Edward Borkowski, the president of Midwest, GNP Farms learned that a Midwest employee made certain errors in preparing the shipment at issue.   (Aff. of Maren F. Grier, Ex. 4 at 19:21-20:24, Nov. 20, 2013, Docket No. 81.)  In light of this information, fourth party plaintiff GNP Poultry filed a complaint against Midwest on September 16, 2013, bringing claims for negligence and negligent misrepresentation based upon Midwest's shipment of the unapproved ingredient.  (Fourth Party Compl. ¶¶ 55-66, Sept. 16, 2013, Docket No. 62.)  Midwest filed an answer on October 8, 2013.   (Answer to Fourth Party Compl., Oct. 8, 2013, Docket No. 73.)

Also on September 16, 2013, GNP Farms filed a Second Amended Complaint ("SAC") naming Wenda and Midwest as defendants, bringing a claim for negligence against Midwest.  (Second Am. Compl., Sept. 16, 2013, Docket No. 61.)  GNP Farms successfully served Midwest with the SAC on September 19, 2013.  (Am. Summons, Sept. 17, 2013, Docket No. 63; Summons Returned Executed, Oct. 4, 2013, Docket No. 71.)  Midwest's answer to the SAC therefore was due October 10, 2013, but Midwest did not file an answer by this day.

## II.    CORRESPONDENCE WITH MIDWEST

The parties dispute the reason for Midwest's failure to file an answer and whether Midwest was aware of the SAC.  Therefore, the Court will describe the communications between the attorneys before the instant motions were filed.

On October 16, 2013, counsel for GNP Farms emailed Thomas Garrity, one of the attorneys representing Midwest who had begun working on Midwest's file on September 27, 2013, and inquired about expert reports.  (Aff. of Thomas Garrity ¶ 1, Ex. 1, Dec. 3, 2013, Docket No. 91.)  Counsel asked:

> Mr. Garrity, do you anticipate putting in an expert report?  Defendants' reports were due on October 2, 2013.  Is it your interpretation under the current scheduling order that as a fourth-party defendant, your report would be due November 1?

(*Id.*, Ex. 1.)  The Scheduling Order, entered into on March 28, 2013, provides that with respect to expert reports:

> The Plaintiffs' disclosures shall be made on or before September 2, 2013. The Defendant's disclosures shall be made on or before October 2, 2013. To the extent necessary, the Third-Party Defendant [GNP Poultry]'s disclosures shall be made on or before November 1, 2013.  All rebuttal disclosures shall be made on or before November 29, 2013.

(Scheduling Order at 4, Mar. 28, 2013, Docket No. 23.)  Garrity replied "I need to discuss this file with Jeff.  Today is the 16th -- I'm supposed to have an expert report in 15 days? I don't know that I can live with the Scheduling Order.  I will have to get back to you." (Garrity Aff., Ex. 1.)

Counsel for GNP Farms again emailed Garrity on October 30, 2013, inquiring whether Midwest planned to file a response to the SAC and about the status of Midwest's

Rule 26 disclosures, which were past due, and requests for certain discovery made during

Borkowski's July deposition.  (Grier Aff., Ex. 1.)  Garrity stated in response:

> Please send me a copy of the Second Amended Complaint; I don't recall
> seeing a Second Amended Complaint directed against Midwest; the
> pleadings in this case are a nightmare.   According to the caption,
> Midwest is a defendant in the original action?  I am involved because
> they are a fourth party defendant.  Was there a motion to amend the
> pleadings to join them as a defendant in a Second Amended Complaint?
> Was I served with that motion?  I don't recall seeing that, either.

(Grier Aff., Ex. 2.)  Garrity also promised to follow up regarding the Rule 26 disclosures

and outstanding discovery requests from Borkowski's deposition.  (*Id.*)  Counsel for GNP

Farms then emailed a copy of the SAC to Garrity.  (*Id.*)  Garrity avers that the October 30

email "was the first time I knew a Second Amended Complaint had been served upon

Midwest." (Garrity Aff. ¶ 6.)

Garrity then spoke with his boss, Jeff Magnus and told Magnus that he needed

help drafting an answer.  (Garrity Aff. ¶ 8.)  Garrity "thought Mr. Magnus had agreed to

interpose the Answer to the Second Amended Complaint and I took that task off my list

of things to worry about." (*Id.*)

On November 5, 2013, counsel for GNP Farms e-mailed Garrity to notify him that

> Wenda and GNP Farms/Poultry agreed to postpone all of the scheduled
> depositions. . . . . If necessary they will be rescheduled to a later date.
> Please note, however, that we still expect Midwest to promptly answer
> the complaint, provide its Rule 26(a)(1) disclosures and provide the
> information Midwest agreed to provide at its Rule 30(b)(6) deposition.

(*Id.*, Ex. 3.)

## III.    MOTION FOR DEFAULT

On November 20, 2011, GNP Farms filed a motion for default judgment against Midwest.  (Mot. for Default J., Nov. 20, 2011, Docket No. 78.)  Later Garrity attempted to contact GNP Farms to ascertain whether they would acquiesce to a late-filed answer.  (Garrity Aff. ¶¶ 11-13.)  Garrity also performed an investigation to determine why he had not been aware of the SAC.  (*Id.* ¶ 14.)  Garrity discovered "that when the file was forwarded to our office by e-mail, our office opened the e-mail but simply missed seeing the Second Amended Complaint contained within all the other papers, including the Fourth Party Complaint.  We simply missed it."  (*Id.*)

On November 22, 2011, Midwest filed an answer to the SAC.  (Answer, Nov. 22, 2013, Docket No. 85.)  GNP Farms threatened to bring a motion to strike the answer for failure to comply with Federal Rule of Civil Procedure 6, which requires permission from the court to file an answer after the time for doing so has expired.  (Decl. of Maren Grier, Ex. 1, Dec. 16, 2013, Docket No. 94.)  Midwest withdrew the answer, and now brings a motion for leave to file its answer to the SAC.  (Mot. for Leave to File Answer, Dec. 17, 2013, Docket No. 95.)[1]

After the present motions were filed GNP Farms and GNP Poultry settled with Wenda.  (Stipulation for Partial Dismissal with Prejudice, Dec. 20, 2013, Docket No. 105.)  Accordingly the Court dismissed GNP Farms' claims against Wenda, Wenda's

---

[1] Midwest has also moved to amend the scheduling order.  (Mot. to Vacate or Amend Scheduling Order, Dec. 20, 2013, Docket No. 100.)  The Magistrate Judge has scheduled a hearing on that motion for January 13, 2014.  (Notice of Hearing, Dec. 20, 2013, Docket No. 101.)

claims against GNP Poultry, and GNP Poultry's counterclaims against Wenda.  (Order of Partial Dismissal, Dec. 23, 2013, Docket No. 108.)

## ANALYSIS

### I.   MOTION FOR DEFAULT

Federal Rule of Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "A judgment of default may, thereafter, be entered on application to the Court."  *Semler v. Klang*, 603 F. Supp. 2d 1211, 1218 (D. Minn. 2009); *see also* Fed. R. Civ. P. 55(b).  "The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court."  *FTC v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977).  There is a strong judicial policy against default judgments and a "preference for adjudication on the merits."  *See Oberstar v. FDIC*, 987 F.2d 494, 504 (8th Cir. 1993).

#### A.   Characterization of Motion

GNP Farms' motion is one for a default judgment under Rule 55(b).  But GNP Farms did not move for, and the clerk has not made, an entry of default against Midwest under Rule 55(a).  "[E]ntry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)."  *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998).  Therefore a district court may not enter a default judgment against a defendant unless an entry of default has been made. *See Prince v. Caribou Coffee Co.*,

Civ. No. 10-4429, 2011 WL 808366, at *1 (D. Minn. Jan. 27, 2011), *report and recommendation adopted by*, 2011 WL 808352 (D. Minn. Feb. 28, 2011).  Because GNP Farms did not first seek the entry of default, its motion for default judgment is procedurally improper.  *See United States ex rel. Sammarco v. Ludeman*, Civ. No. 09-0880, 2010 WL 1335460, at *15 (D. Minn. Jan. 28, 2010) ("A motion for default judgment is therefore procedurally improper where, as here, the movant has not yet accomplished the first step: entry of default by the clerk.").

GNP Farms argues that its motion can be treated as one for simultaneous entry of default and entry of default judgment.  As support for this proposition, GNP Farms cites *Johnson v. Dayton Electric Manufacturing Co.*, 140 F.3d 781 (8th Cir. 1998).  In *Johnson*, the plaintiff did not seek entry of default by the clerk before filing a motion for default judgment.  *Id.* at 783.  After the district court granted the motion, the defendant filed a motion to set aside the default judgment and "argued that the court's order should be considered an entry of default under Fed. R. Civ. P. 55(a) that may be set aside '[f]or good cause shown' under Rule 55(c)."  *Id.*  The district court concluded that its motion should be considered an entry of default rather than an entry of default judgment, and the Eighth Circuit agreed, explaining:

> When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b).  Thus, [plaintiff] was wrong to move for a default judgment and was rather underhanded to make that motion without notice to an attorney with whom he had been in contact for seven months and to whom he had furnished a 'courtesy' copy of the complaint.

*Id.* (citations omitted).  Additionally, the Eighth Circuit reasoned that proceeding directly to entry of a default judgment without first entering a default would prejudice the ability of the defendant to have the default set aside because "relief from a default judgment requires a stronger showing of excuse than relief from a mere default order."  *Id.* (internal quotation marks omitted).  Therefore, although *Johnson* potentially supports the proposition that the Court may treat a premature motion for entry of default judgment as one for the entry of default, *Johnson* does not confer upon the Court the ability to consolidate the entry of default and the entry of default judgment in the manner contemplated by GNP Farms.

When faced with similar procedural situations courts in this district, while noting that entry of default judgment would be inappropriate in the absence of prior entry of default, have gone on to consider whether, even if the Clerk had entered a default judgment, good cause would justify setting aside any such default.  *See, e.g.*, *Ludeman*, 2010 WL 1335460, at *16 ("Although the Clerk of Court has not entered a default . . . and entry of a default judgment would not be appropriate given the law in the Eighth Circuit, Plaintiff has, arguably, presented evidence . . . that [defendant] did not respond to the Amended Complaint within the time permitted by the Rules . . . . However, even if the Clerk of Court did enter a default against [defendant], this Court would consider whether good cause justifies setting aside any such default."); *Johnson v. Allied Interstate, Inc.*, Civ. No. 02-910, 2002 WL 1906024, at *2 (D. Minn. Aug. 19, 2002) ("Even if a default had been entered by the Clerk of Court after Johnson filed her motion for default judgment, the Court would have ample grounds for vacating it.").  The Court

will adopt this approach with respect to GNP Farms' motion because it allows Midwest the opportunity to take advantage of the less stringent "good cause" standard for setting aside an entry of default. *See Puppe v. Ametek, Inc.*, Civ. No. 10-3888, 2012 WL 3870556, at *3 (D. Minn. Sept. 6, 2012) ("It is particularly appropriate to apply a less stringent standard to cases where a defendant has made an appearance **before** a default judgment since 'there is a judicial preference for adjudication on the merits,' and 'it is likely that a party who promptly attacks an entry of default, rather than waiting for a grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits.'" (emphasis in original) (quoting *Johnson*, 140 F.3d at 784)). Additionally such an approach avoids the inefficiency created by denying the premature motion for default judgment and requiring GNP Farms to obtain an entry of default before refiling the motion only to have the Court find that good cause exists to set aside that default.

### B.    Good Cause

Under Rule 55, the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In determining whether good cause exists, the Court weighs "whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused." *Johnson*, 140 F.3d at 784.

#### 1.    Blameworthy or Culpable

In determining the blameworthiness or culpability of the defaulting party, the Court "distinguish[es] between contumacious or intentional delay or disregard for

deadlines and procedural rules, and a marginal failure to meet pleading or other deadlines." *Id.* (internal quotation marks omitted).  Here, Midwest claims that its failure to file the answer was caused by confusion due to the at times incomprehensible collection of pleadings in this litigation and a miscommunication between Garrity and Magnus regarding drafting of the answer.

The Court finds that the initial failure to respond to the SAC was not blameworthy or culpable in light of the confusing pleadings.  Garrity indicated that he failed to realize the SAC was a separate pleading from the Fourth Party Complaint filed on the same day, to which Midwest did interpose an answer.  This type of confusion does not suggest an intentional delay or disregard for deadlines.  *See United States ex rel. Shaver v. Lucas W. Corp.*, 237 F.3d 932, 933 (8th Cir. 2001) (setting aside a default judgment when defendant erroneously believed that the complaint at issue related to a contemporaneously filed lawsuit between the same parties); *Bigham v. Vogt Heating, Air Conditioning & Plumbing, LLC*, Civ. No. 11-2526, 2012 WL 1394533, at *2 (D. Minn. Apr. 23, 2012) (finding failure to respond to the complaint reasonable where three days after receiving the complaint at issue defendants received a notice of dismissal related to a different dispute involving the same parties).

Additionally, once Garrity received notice on October 30 of the SAC and the need for an answer, the failure to file an answer was a result of miscommunication.  Garrity submitted an affidavit indicating that:

> Our failure to Answer the Second Amended Complaint was not a deliberate disregard for the Rules.  I failed to interpose an Answer to the Second Amended Complaint due to an honest mistake.  Once I become aware of

> the need to interpose an Answer, I discussed the situation with Jeff Magnus
> and thought he was doing the Answer; he did not have that same
> understanding and he thought I was doing the Answer.

(Garrity Aff. ¶ 15; *see also* Aff. of Jeffrey A. Magnus ¶¶ 7-8, Dec. 2, 2013, Docket

No. 86 ("The simple answer is that following the earlier discussions regarding the need to

interpose an Answer . . . there was a misunderstanding between myself and attorney

Thomas Garrity as to who would take responsibility for filing the Answer . . . .").)  The

contentions of Garrity and Magnus that the failure to file an answer was a mistake rather

than a willful and intentional violation of the Rules are supported by the fact that

Midwest **did** interpose a timely answer to the Fourth Party Complaint.  Surely if Midwest

intended to avoid its obligation to be involved in this litigation and deliberately disregard

its obligation to timely respond to pleadings, it would not have filed a timely answer to

that complaint.  Indeed, as soon as Garrity and Magnus realized their error (when GNP

Farms filed the motion for default judgment) they filed an answer to the SAC, suggesting

that their explanation for the delay is credible.

GNP Farms argues that Midwest's failure to participate in this lawsuit extends

beyond its failure to answer the SAC and therefore demonstrates a pattern of deliberately

disregarding the Rules.  GNP Farms cites Midwest's failure to comply with the

scheduling order in disclosing expert reports, general failure to "diligently participate in

this lawsuit," filing an answer to the SAC without seeking leave of the Court, and failure

to provide Rule 26(a) disclosures, as evidence of its "scofflaw attitude" which justify the

entry of default.  (Reply at 4, 6, Dec. 16, 2013, Docket No. 93.)

With respect to the failure to comply with the scheduling order, the Court finds that GNP Farms' claim is exaggerated.  GNP Farms claims that Midwest has not disclosed experts "and the deadline to do so has passed."  (Reply at 8.)  As support GNP Farms cites to the Scheduling Order which says nothing about when Midwest, a fourth party defendant is required to submit expert reports.  Instead, it appears that GNP Farms assumed that the deadline for a third party defendant (who was actually a party to the lawsuit when the Scheduling Order was filed) would also apply to Fourth Party Defendants.  (*See* Scheduling Order at 4.)  Because the Scheduling Order did not clearly set any deadline for Midwest's disclosure of expert reports, the Court declines to find that its failure to disclose such reports suggests blameworthiness or culpability.

The Court is similarly not persuaded by the contention that Midwest has demonstrated culpability by failing to "diligently participate" in this lawsuit.  Midwest made its president available for a deposition early in the litigation, albeit pursuant to a subpoena.  Midwest timely responded to the Fourth Party Complaint, has been responsive to the communications of opposing counsel, attended depositions, timely responded to the present motion for default – including interposing an answer, has filed a motion to amend the scheduling order, and otherwise seems engaged in the litigation.

The Court also finds that Midwest's filing of a late answer without prior approval of the Court does not demonstrate sufficient blameworthiness or culpability to warrant the entry of default.  As explained above, Midwest's counsel did not realize their mutual mistake in failing to file an answer until the motion for default was filed.  Additionally, upon the threat of a motion to strike, Midwest promptly filed an appropriate motion and

- 13 -

withdrew its answer.  These actions suggest that the late-filed answer was an act of misguided diligence, rather than an effort to deliberately disobey the rules

Finally, although the Court is troubled by Midwest's continued failure to file its Rule 26(a) disclosures, this failure appears to be closely related to its failure to file an answer to the SAC, and therefore does not appear to be fairly characterized as a separate event for purposes of determining blameworthiness.  In his October 31 email Garrity also asked counsel for GNP Farms to clarify which aspects of the Rule 26 disclosures it believed were missing stating "you've taken Midwest's deposition and you have their documents."  (Greir Aff., Ex. 2.)  Due to Midwest's prior involvement in the suit, it does not appear that all of the information required by Rule 26 remained undisclosed at the time the deadline for such disclosures passed.  Additionally, the record does not reflect that GNP Farms responded to this request for clarification.  Accordingly, the Court finds that the failure to file timely Rule 26 disclosures, although certainly careless, does not reflect sufficient blameworthiness or culpability to warrant entry of default.  *See Johnson*, 140 F.3d at 784 ("[T]he combined conduct of Dayton Electric's in-house attorney and its insurer was careless, risking precisely the adverse result rendered by the district court. But it was not contumacious, it did not exhibit an intentional flouting or disregard of the court and its procedures, and it only briefly delayed the litigation.").

### 2.    Meritorious Defense

"Whether a meritorious defense exists is determined by examining whether the proffered evidence would permit a finding for the defaulting party."  *Stephenson v. El-*

*Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) (internal quotation marks omitted).  The task for the Court is not to resolve disputed facts, but rather to determine whether the defendant has come forward with facts that, if true, would provide a defense.  *See Johnson*, 140 F.3d at 785 (explaining that the defendant need not show that he will succeed on the merits or that the evidence is undisputed but rather that "the proffered evidence would permit a finding for the default party" (internal quotation marks omitted)).

Midwest argues that it has a meritorious defense because a jury could find that the damages suffered by GNP Farms were caused by GNP Poultry's failure to ascertain that the wrong ingredient had been shipped and proceeding to process poultry with the wrong ingredient.  Midwest cites to the report of an expert retained by Wenda, who concluded that "had GNP Poultry implemented and practiced its food safety program consistent with industry standards and common sense, it would have identified the [erroneous ingredient] before it was used . . . to process any food product."  (Mem. in Opp. to Mot. for Default J. at 4, Dec. 2, 2013, Docket No. 87.)  Midwest lays out a series of errors that GNP Poultry made in using the wrong ingredient, which if a jury found to be true could reduce or possibly eliminate Midwest's liability for causing GNP Farms' damages.  (*Id.* at 4-7.)

GNP Farms argues that Midwest does not have a meritorious defense because "even assuming for the sake of argument that GNP Poultry has caused some of the damages, it is absolutely clear that Midwest Warehouse will not be excused from **all** liability here."  (Reply at 7-8 (emphasis added).)  But GNP Farms also seeks entry of default judgment as to causation.  Being responsible for causing less than the total

damages sought by a plaintiff is certainly a meritorious defense to a claim of complete liability. The important question for purposes of determining whether to set aside entry of default is whether the outcome would be the same if default is entered or if litigation proceeds on the merits. *See Stephenson*, 524 F.3d at 914 ("The underlying concern is whether there is some possibility that the outcome after a full trial will be contrary to the result achieved by the default." (alterations and internal quotation marks omitted)). Liability for causing all of GNP Farms' damages is a very different outcome than liability for causing some of those damages.

GNP Farms also argues that Midwest is not entitled to rely on the findings of Wenda's expert because that expert may have been opining only as to fault as between Wenda and GNP Poultry, not Midwest and GNP Poultry.[2] The Court notes that its task at this stage is limited to determining whether the proffered evidence would permit a finding for Midwest. *See Johnson*, 140 F.3d at 785. Wenda's expert identified numerous practices that GNP Poultry should have engaged in and that, if they had been engaged in could have reduced or eliminated the damages suffered by GNP Farms. This is sufficient for the Court to determine that "if true, Defendant's claim presents a meritorious defense." *Metcalf v. E.I. du Pont de Nemours & Co.*, Civ. No. 05-1035, 2006 WL

---

[2] GNP Farms also takes issue with Midwest's reliance upon the expert report of Wenda because (a) Midwest did not disclose that expert and (b) "GNP Farms' expert disagrees." (Reply at 8.) First, that Midwest has not disclosed this expert does not suggest that there is not a meritorious defense. Indeed it would defeat the purpose of the inquiry if a plaintiff could prevail on the meritorious defense question by saying, "Do not listen to defendant's factual contentions about the merits because they have not yet disclosed them in an answer." The question for the Court is whether, if the defendant answers and participates in litigation on the merits, does it have a meritorious defense to the conduct alleged. Second, it is immaterial for purposes of determining whether Midwest might have a meritorious defense that GNP Farms' expert disagrees with Wenda's expert, as the Court is not required to resolve disputed facts at this stage.

1877069, at *5 (D. Minn. July 6, 2006).  Because Midwest has come forward intending to

defend the lawsuit on the merits, the Court finds that good cause exists to set aside any

default that could have been entered.  *See Am. States Ins. Corp. v. Tech. Surfacing, Inc.*,

178 F.R.D. 518, 521 (D. Minn. 1998) ("[W]here a defendant appears and indicates a

desire to contest an action, a court may exercise its discretion to refuse to enter default, in

accordance with the policy of allowing cases to be tried on the merits." (internal

quotation marks omitted)).

### 3.      Prejudice

Finally, GNP Farms argues that it will be prejudiced because of its inability to

obtain timely discovery if the Court were to determine that any entry of default should be

set aside.  The key piece of information GNP Farms contends it is missing is the name of

the Midwest employee who made the alleged shipping error.[3]  GNP Farms contends that

it is prejudiced in its ability to depose this person because discovery closed on

December 31, 2013.  (Reply at 6.)  Additionally, GNP Farms argues generally that its

"ability to promptly and efficiently prosecute its case has been hindered."  (*Id.* at 8.)

With respect to the inability to obtain discovery, the Court concludes that GNP

Farms has not suffered prejudice sufficient to justify entry of default.  When GNP Farms

filed the SAC, discovery was already under way and the deposition of Midwest's

president had been completed.  Therefore, this is not a situation where the plaintiff was

prejudiced by its inability to obtain any information about a defendant or its defenses due

---

[3] At oral argument, counsel for GNP Farms indicated that Midwest has now provided the name of the employee but has not yet produced his address.

to a failure to file a timely response.   Additionally, after the SAC was filed Midwest continued to participate in depositions.   GNP Farms' complaint that it can no longer take the deposition of Midwest employees because discovery has closed does not demonstrate real prejudice stemming from Midwest's failure to answer.   Rather, the prejudice described by GNP Farms was due to the deadlines imposed by the scheduling order, which GNP Farms could have moved to amend.   Motions for default are not proper substitutes for motions to amend a scheduling order.   Certainly when a new defendant is added to the litigation more than six months after a scheduling order has been entered, the plaintiff would be well within its right to seek an appropriate extension of discovery deadlines to accommodate the new addition to the litigation.

GNP Farms also contends that Midwest has not provided certain documents that were promised during the deposition of Midwest's president.   Again, a motion for default should not be used as a substitute for a motion to compel.   The outstanding requests relate back to a deposition that was taken prior to Midwest being added as a defendant in the lawsuit.   Therefore, the failure to obtain these documents is unrelated to Midwest's failure to file an answer to the SAC.   Based on Midwest's recent behavior, the Court believes that Midwest will be an active participant in the litigation.[4]

With respect to GNP Farms' ability to promptly and efficiently prosecute its case, the Court concludes that any prejudice suffered has been de minimis.   First, the SAC is almost identical to the Fourth Party Complaint that Midwest did answer.   The late-filed

---

[4] The Court cautions Midwest, however, that should it fail, in the future, to comply with any deadlines set by Court orders, the Federal Rules of Civil Procedure, or the Local Rules, the Court will entertain requests for sanctions based on such a failure.

answer to the SAC does not contain any new affirmative defenses or denials that were not contained in the answer to the Fourth Party Complaint. Therefore, GNP Farms is on notice of Midwest's defenses and factual contentions. Furthermore, the manner in which this case has been pled and litigated certainly suggests that GNP Farms, GNP Poultry, and Wenda have done as much, if not more, to hinder that goal than Midwest. In sum, because "[t]he entry of default judgment is not favored by the law and should be a rare judicial act," *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (internal citations and quotation marks omitted), and GNP Farms has not demonstrated sufficient prejudice to warrant the entry of default, the Court will deny GNP Farms' motion.

## II.     MOTION FOR LEAVE TO FILE AN ANSWER

Federal Rule of Civil Procedure 6 provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Excusable neglect is an 'elastic concept' that empowers courts to accept, 'where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 388 (1993)). In determining whether neglect is excusable courts consider the possibility of prejudice to the non-moving party, the length of the delay in filing and the impact of that delay on the judicial proceedings, the reasons for the delay, and whether the late-filers acted in good

faith.  *Id.*  Courts also consider whether the late-filer has a meritorious defense.  *Id.* at 947.

The Court has already determined that the prejudice suffered by GNP Farms in allowing the litigation to proceed is minimal.  Additionally, the Court has found that Midwest acted inadvertently and carelessly rather than in bad faith and that Midwest has a meritorious defense.  Furthermore, the delay of several weeks in filing an answer does not threaten to substantially delay the judicial proceedings.  Therefore, the Court will grant Midwest's motion and allow it file an answer to the SAC.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Default Judgment [Docket No. 78] is **DENIED**.

2.      Defendant's Motion for Leave to File Its Answer to the Second Amended Complaint [Docket No. 95] is **GRANTED**.  Defendant's answer must be filed within five (5) days of the entry of this Order.

3.      Defendant must serve its Rule 26(a) disclosures upon Plaintiff within five (5) days of the entry of this Order.

DATED:  January 10, 2014               _s/ John M. Tunheim_
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                         United States District Judge